## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY,<br><br>               Plaintiff,<br><br>v.<br><br>VALLEY FORGE INSURANCE COMPANY,<br><br>               Defendant. | Civil Action No. |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

NOW COMES the Plaintiff, THE TRAVELERS INDEMNITY COMPANY ("Travelers"), by and through its attorneys, CASSIDAY SCHADE LLP, and for its Complaint for Declaratory Judgment and Other Relief against Defendant, VALLEY FORGE INSURANCE COMPANY ("Valley Forge"), states as follows:

## PARTIES AND VENUE

1.    Plaintiff, Travelers, is a corporation with its principal place of business in Connecticut and is organized under the laws of the State of Connecticut.

2.    Defendant, Valley Forge, is a corporation with its principal place of business in Illinois and is organized under the laws of the State of Pennsylvania.

3.    Pursuant to 28 U.S.C. § 1332(a), this Court has subject matter jurisdiction over this dispute because there is complete diversity between the plaintiff and the defendant herein, and the amount at issue exceeds $75,000, exclusive of interest and costs.

4.    Further, pursuant to 28 U.S.C. § 1391(b), venue is proper in this District because this is a judicial district in which the defendant does business, where the insurance contract at issue was issued, and where a substantial portion of the events giving rise to the claim occurred.

## **NATURE OF THE ACTION**

5.     This declaratory judgment action seeks to establish coverage for Travelers's named insured, Whiting-Turner Contracting Company ("Whiting-Turner"), as an additional insured under a commercial general liability insurance policy that Valley Forge issued to Cooper's Steel Fabricators, Inc. ("Cooper's Steel"), for an underlying personal injury lawsuit Kenneth J. Buccola ("Buccola") filed against Whiting-Turner, Cooper's Steel and others in the Circuit Court of Cook County, Illinois as Case No. 21 L 007337 (hereinafter, "the *Buccola* Lawsuit").

6.     By this action, Travelers seeks a declaration that Valley Forge must defend and indemnify Whiting-Turner on a primary and non-contributory basis in connection with the *Buccola* Lawsuit; that Valley Forge has breached its duty to defend Whiting-Turner; that Valley Forge is estopped from denying coverage to Whiting-Turner; and that Valley Forge breached its contract by refusing to defend Whiting-Turner on a primary and non-contributory basis.  Plaintiff also seeks a ruling that Valley Forge must reimburse Travelers for all of the attorney's fees and expenses Travelers has paid for Whiting-Turner's defense of the *Buccola* Lawsuit.

## **THE BUCCOLA LAWSUIT**

7.     On July 20, 2021, Buccola filed a Complaint at Law in the *Buccola* Lawsuit against Whiting-Turner, Cooper's Steel and other defendants.  Buccola subsequently filed a First Amended Complaint at Law.  A true and correct copy of the First Amended Complaint at Law is attached hereto as Exhibit A.

8.     Counts I, II and III of the First Amended Complaint at Law are directed against Whiting-Turner, and they are actions for construction negligence, premises liability and negligence.

9. Counts X, XI and XII of the First Amended Complaint at Law are directed against Cooper's Steel, and they are similarly actions for construction negligence, premises liability and negligence.

10. In the First Amended Complaint at Law, it is alleged that on December 10, 2020, Whiting-Turner and Cooper's Steel owned and/or were in charge of and/or in control of the erection, construction, alteration, design, inspection, planning, management, coordinating, scheduling, and/or removal of a certain building or structure located at or near 7001 Vollmer Road in the Village of Matteson, Cook County, Illinois (the "Project").

11. It is also alleged in the First Amended Complaint at Law that on December 10, 2020, Buccola was employed by Area Erectors, Inc. and was lawfully working on and about the jobsite as an ironworker on the Project.

12. It is also alleged in the First Amended Complaint at Law that Whiting-Turner and Cooper's Steel erected, constructed, placed and/or operated, or caused to be erected, constructed, placed and/or operated a trench and an unstable and unsecured makeshift bridge across the trench at the jobsite.

13. It is also alleged in the First Amended Complaint at Law that Buccola's duties and responsibilities required that he access his work area using an unstable and unsecured makeshift bridge across a trench, in the furtherance of the work at the jobsite.

14. It is also alleged in the First Amended Complaint at Law that Whiting-Turner and Cooper's Steel were negligent in, *inter alia*, failing to make a reasonable inspection of the premises and the work being done thereon; failing to provide Buccola with a safe place to work; failing to warn Buccola of the dangerous condition; failing to ensure that there was a safe means of crossing

the trench before allowing work to proceed; and failing to ensure that the bridge across the trench was safe before allowing work to proceed.

15.    It is also alleged in the First Amended Complaint at Law that on or about December 10, 2020, Buccola, while working on and about the jobsite and crossing the trench using the unstable and unsecured bridge, was caused to stumble, fall, and/or otherwise become injured due to the unsafe condition of the makeshift bridge and/or trench, which is alleged to have proximately caused Buccola to be injured.

16.    On February 25, 2022, Whiting-Turner filed a Cross-Complaint for contribution and breach of contract against Cooper's Steel in the *Buccola* lawsuit.  A true and correct copy of the Cross-Complaint is attached hereto as Exhibit B.

## THE SUBCONTRACT

17.    Whiting-Turner was the general contractor for the Project at issue in the *Buccola* Lawsuit.

18.    On May 22, 2020, Whiting-Turner entered into a Subcontract with Cooper's Steel (hereinafter, "Subcontract"), wherein Cooper's Steel agreed to furnish all the labor, materials, services and equipment required to furnish and install structural steel and other steel components for the Project.  A true and correct copy of the Subcontract is attached hereto as Exhibit C.

19.    The Subcontract, at Exhibit A, General Insurance Requirements, states as follows:

GENERAL INSURANCE REQUIREMENTS
 Prior to commencement of any work on the Project, Subcontractor shall, at its own expense, maintain, during the term of this Subcontract and any extensions thereof, the following insurance in the forms and with limits to satisfy both the requirements listed on this Exhibit A and those specified by the Subcontract and/or any other applicable Contract Documents.

 All insurance policies must be from insurers authorized to conduct business within the state(s) where the project is located. The insurance

companies must also have a Best's Rating of at least "A-" and a financial size of "Class VII" or better. Subcontractor shall disclose and shall be responsible for payment of any deductibles or self-insured retention under these policies. No self-insured retentions shall be allowed under any of Subcontractor's policies without prior written consent of Contractor. Failure to adhere to these requirements shall constitute a material breach of the Subcontract.

Any limit of insurance listed in this Section shall serve as only a minimum limit requirement of coverage. It is understood and agreed that this Exhibit shall in no way limit Subcontract's liability to any dollar value or insurance coverage limits stated herein.

\*        \*        \*

<u>COMMERCIAL GENERAL LIABILITY INSURANCE</u>

This insurance must be written on Standard ISO CGL Form CG 00 01 (or any equivalent form) on an "occurrence" basis, responding to claims arising out of occurrences which take place during the policy period. The commercial general liability coverage limits shall be the maximum limits available under the policy, but in no event less than, the following:

$1,000,000 each occurrence for bodily injury and property damage
$1,000,000 each incident for personal and advertising injury
$2,000,000 products-completed operations aggregate
$2,000,000 general aggregate
$100,000 fire legal liability
$10,000 medical expense

The general aggregate limit shall apply separately to each project. The products and completed operations coverage is to be maintained for a period at least equivalent to the period under which the Contractor is potentially liable for work performed whether under the Contract Documents and/or at law, whichever period is greater. The Whiting-Turner Contracting Company is to be included as an additional insured.

\*        \*        \*

<u>PROOF OF INSURANCE/ENDORSEMENTS/ADDITIONAL INSURED REQUIREMENTS</u>

Prior to commencing work and throughout the Subcontract term and any extensions thereof, as a material term of the Subcontract, Subcontractor shall provide Whiting-Turner with certificates of insurance using the

ACORD form or its equivalent executed by a duly authorized representative of each insurer and with copies of any necessary riders or endorsements attached. Such riders and endorsements shall be in a form reasonably acceptable to Whiting-Turner, evidencing that Subcontractor's insurance coverage is in compliance with the insurance requirements set forth in this Exhibit A and in the Contract Documents.

All insurance policies shall be endorsed to provide at least 30 days prior written notice to Whiting-Turner of cancellation or non-renewal of any insurance provided pursuant to this Exhibit A or at least 10 days notice of cancellation due to non-payment of premiums.

Whiting-Turner, the Owner and other entities as required by the Contract Documents or otherwise required by Owner or Contractor shall be named as an additional insured under the Commercial General Liability, Auto Liability and Umbrella Excess Liability policies of insurance, and special policies listed below if applicable, per standard ISO endorsement forms 2010 (11/85) for Ongoing Operations and Products/Completed Operations, if available, or otherwise per standard ISO endorsement forms 2010 (07/04) for Ongoing Operations and 2037 (07/04) for Products/Completed Operations, or equivalent. Coverages shall be maintained by Subcontractor for itself and for the additional insureds for a period at least equivalent to the period under which the Contractor is potentially liable for work performed whether under the Contract Documents and/or at law, whichever period is greater. Such insurance shall include cross-liability coverage as provided under standard ISO forms separation of insured clause. It is expressly agreed and understood by and between Subcontractor and Whiting-Turner that the insurance afforded the additional insureds shall be the primary insurance and that any other insurance carried by Whiting-Turner shall be excess of all other insurance carried by the Subcontractor and shall not contribute with the Subcontractor's insurance. Subcontractor further agrees to provide endorsements on its insurance policies as required to comply with these requirements. Subcontractor further agrees to include, to the fullest extent permitted by applicable law, the following language on its insurance certificate to acknowledge compliance with these requirements; however, Subcontractor's failure to provide such endorsements or acknowledgement shall not affect Subcontractor's agreement hereunder:

*"Whiting-Turner, the Owner,[insert the names of additional insured entities] and other entities as required by the Contract Documents or*

*otherwise required by Owner or Contractor are Additional Insured's under the primary and umbrella excess liability insurance policies on a primary and non-contributory basis for Ongoing Operations and for Completed Operations and such coverage shall comply with the provisions of standard ISO endorsement forms. A Waiver of Subrogation in favor of the above listed parties shall apply to the primary and umbrella excess policies required under this Subcontract. Additional Insured's shall be provided at least 30 days prior notice of cancellation or non-renewal, or at least 10 days notice of cancellation due to non-payment."*

\*      \*      \*

20.     Pursuant to the Subcontract, Cooper's Steel was required to name Whiting-Turner as an additional insured under Cooper's Steel's commercial general liability insurance policy on a primary and non-contributory basis for the Project.

21.     On March 25, 2021, HUB International Mid-South issued a Certificate of Liability Insurance to Whiting-Turner as Certificate Holder, which identifies Whiting-Turner as an additional insured under the primary and excess liability policies issued to Cooper's Steel, including the Valley Forge Policy (hereinafter, "Certificate of Liability Insurance"). A true and correct copy of the Certificate of Liability Insurance and attachments thereto is attached hereto as Exhibit D.

<u>**THE INSURANCE POLICIES**</u>

22.     Travelers issued its Commercial Policy No. VTC2K-CO-5788B20A-IND-20 to Whiting-Turner for the August 1, 2020 to August 1, 2021 policy period, which includes Commercial General Liability coverage for Whiting-Turner as the Named Insured (hereinafter, the "Travelers Policy").

23.     Valley Forge issued its Commercial General Liability Policy No. 1035207648 to Cooper's Steel for the September 1, 2020 to September 1, 2021 policy period, with a $1 million Each Occurrence limit of liability (hereinafter, the "Valley Forge Policy").

24.     The Valley Forge Policy provides commercial general liability coverage to Cooper's Steel and any other entities that qualify as "insureds" for "bodily injury" caused by an "occurrence" that takes place during the September 1, 2020 to September 1, 2021 policy period.

25.     The Valley Forge Policy contains the following Blanket Additional Insured – Owners, Lessees or Contractors – with Products-Completed Operations Coverage Endorsement:

> **Blanket Additional Insured – Owners, Lessees or Contractors – with Products-Completed Operations Coverage Endorsement**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> It is understood and agreed as follows:
>
> **I.**   The **WHO IS AN INSURED** section is amended to add as an **Insured** any person or organization whom the **Named Insured** is required by **written contract**  to add as an additional insured on this **coverage part**, including any such person or organization, if any, specifically set forth on the Schedule attachment to this endorsement.  However, such person or organization is an **Insured** only with respect to such person or organization's liability for:
>
> **A.**  unless paragraph **B**. below applies,
>
> **1.**  **bodily injury, property damage,** or **personal and advertising injury** caused in whole or in part by the acts or omissions by or on behalf of the **Named Insured** and in the performance of such **Named Insured's** ongoing operations as specified in such **written contract**; or
>
> **2.**  **bodily injury** or **property damage** caused in whole or in part by **your work** and included in the **products-completed operations** hazard, and only if
>
> **a.**  the **written contract** requires the **Named Insured** to provide the additional insured such coverage; and
>
> **b.**  this **coverage part** provides such coverage.
>
> **B.**  **bodily injury**, **property damage**, or **personal and advertising injury** arising out of **your work** described in such **written contract**, but only if:

1.   this **coverage part** provides coverage for **bodily injury** or **property damage** including within the **products completed operations hazard**; and

2.   the **written contract** specifically requires the **Named Insured** to provide additional insured coverage under 11-85 or 10-01 edition of CG2010 or the 10-01 edition of CG2037.

\*        \*        \*

**IV.**    Notwithstanding anything to the contrary in the section entitled **COMMERCIAL GENERAL LIABILITY CONDITIONS,** the Condition entitled Other Insurance, this insurance is excess of all other insurance available to the additional insured whether on a primary, excess, contingent or any other basis.  However, if this insurance is required by **written contract** to be primary and non-contributory, this insurance will be primary and non-contributory relative solely to insurance on which the additional insured is a named insured.

\*        \*        \*

**VI**.    Solely with respect to the insurance granted by this endorsement, the section entitled **DEFINITIONS** is amended to add the following definition:

**Written contract** means a written contract or written agreement that requires the **Named Insured** to make a person or organization an additional insured on this **coverage part**, provided the contract or agreement:

**A.**    is currently in effect or becomes effective during the term of this policy; and

**B.**    was executed prior to:

1.   the bodily injury or property damage; or

2.   the offense that caused the personal and advertising injury for which the additional insured seeks coverage.

1.   The insurance afforded to such additional insured only applies to the extent permitted by law; and

2.   If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

\* \* \*

26. The Valley Forge Policy also contains a Contractors' General Liability Extension

Endorsement, which states as follows:

### Contractors' General Liability Extension Endorsement

It is understood and agreed that this endorsement amends the **COMMERCIAL GENERAL LIABILITY COVERAGE PART** as follows. If any other endorsement attached to this policy amends any provision also amended by this endorsement, then that other endorsement controls with respect to such provision, and the changes made by this endorsement with respect to such provision do not apply.

\* \* \*

1. **ADDITIONAL INSUREDS**

   a. **WHO IS AN INSURED** is amended to include as an **Insured** any person or organization described in paragraphs **A.** through **H.** below whom a **Named Insured** is required to add as an additional insured on this **Coverage Part** under a written contract or written agreement, provided such contract or agreement:

      **(1)** is currently in effect or becomes effective during the term of this **Coverage Part**; and

      **(2)** was executed prior to:

         **(a)** the **bodily injury** or **property damage**; or

         **(b)** the offense that caused the **personal and advertising injury**, for which such additional insured seeks coverage.

   b. However, subject always to the terms and conditions of this policy, including the limits of insurance, the Insurer will not provide such additional insured with:

      **(1)** a higher limit of insurance than required by such contract or agreement; or

      **(2)** coverage broader than required by such contract or agreement, and in no event broader than that described by the applicable paragraph **A.** through **H.** below.

   Any coverage granted by this endorsement shall apply only to the extent permissible by law.

                              *          *          *

2. **ADDITIONAL INSURED - PRIMARY AND NON-CONTRIBUTORY TO ADDITIONAL INSURED'S INSURANCE**

   The **Other Insurance** Condition in the **COMMERCIAL GENERAL LIABILITY CONDITIONS** Section is amended to add the following paragraph:

   If the **Named Insured** has agreed in writing in a contract or agreement that this insurance is primary and noncontributory relative to an additional insured's own insurance, then this insurance is primary, and the Insurer will not seek contribution from that other insurance. For the purpose of this Provision 2., the additional insured's own insurance means insurance on which the additional insured is a named insured. Otherwise, and notwithstanding anything to the

contrary elsewhere in this Condition, the insurance provided to such person or organization is excess of any other insurance available to such person or organization.

*    *    *

### WHITING-TURNER TENDERS TO VALLEY FORGE

27.     On November 19, 2021, Whiting-Turner tendered its defense and indemnity for the *Buccola* Lawsuit to Cooper's Steel and Valley Forge pursuant to the Subcontract, the Certificate of Liability Insurance and attachments thereto, and the Valley Forge Policy.

28.     Valley Forge has failed to respond to Whiting-Turner's tender, and Valley Forge has failed to defend Whiting-Turner in the *Buccola* Lawsuit.

29.     As a result of Valley Forge's failure to accept Whiting-Turner's tender, Travelers alone has paid for all of Whiting-Turner's defense fees and costs with regard to the *Buccola* Lawsuit under the Travelers Policy.

### COUNT I
### DECLARATORY JUDGMENT UNDER 28 U.S.C. § 1331

### VALLEY FORGE HAS A DUTY TO DEFEND WHITING-TURNER

30.     Travelers restates and incorporates the foregoing paragraphs 1 through 29 as though fully set forth and stated herein.

31.     Pursuant to the Additional Insured endorsements contained in the Valley Forge Policy, the Valley Forge Policy provides additional insured coverage to "any person or organization whom [Cooper's Steel] is required by written contract to add as an additional insured" on the Commercial General Liability Coverage Part of the Valley Forge Policy.

32.     The Subcontract for the Project is a written contract that was executed by Whiting-Turner and Cooper's Steel, and which required Cooper's Steel to add Whiting-Turner as an additional insured on the Valley Forge Policy.

12

33. The Subcontract for the Project required Cooper's Steel to name Whiting-Turner as an additional insured on a primary and non-contributory basis under the Valley Forge Policy for purposes of the Project.

34. Whiting-Turner is an additional insured on the Valley Forge Policy.

35. The First Amended Complaint at Law in the *Buccola* Lawsuit alleges that Cooper's Steel's negligence in performing its work on the Project was a direct and proximate cause of Buccola's alleged accident and injuries.

36. Valley Forge has a duty to defend Whiting-Turner as an additional insured under the Valley Forge Policy based upon the Insurance Requirements of the Subcontract for the Project, the Additional Insured endorsements contained in the Valley Forge Policy, and the allegations contained in the *Buccola* Lawsuit's First Amended Complaint at Law.

37. An actual controversy exists between the parties and this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as it deems necessary under the facts and circumstances.

WHEREFORE, The Travelers Indemnity Company prays for entry of a judgment in its favor and against Valley Forge, and for the following relief:

(a) Determine and adjudicate that Whiting-Turner qualifies as an additional insured under the Valley Forge Policy;

(b) Determine and adjudicate that Valley Forge has a duty to defend Whiting-Turner, on a primary and non-contributory basis, under the Valley Forge Policy in connection with the *Buccola* Lawsuit;

(c) Order that Valley Forge must reimburse Travelers for all attorney's fees and costs paid by Travelers in connection with Whiting-Turner's defense of the *Buccola* Lawsuit; and

(d) Grant such other relief as is deemed appropriate.

<u>**COUNT II**</u>
<u>**DECLARATORY JUDGMENT UNDER 28 U.S.C. § 1331**</u>

**VALLEY FORGE IS ESTOPPED FROM DENYING COVERAGE**

38.   Travelers restates and incorporates the foregoing paragraphs 1 through 37 as though fully set forth and stated herein.

39.   By refusing to defend Whiting-Turner in response to Whiting-Turner's tender of defense, Valley Forge has breached its duty to defend Whiting-Turner under the Valley Forge Policy.

40.   By breaching its duty to defend Whiting-Turner, failing to defend Whiting-Turner under a reservation of rights, and failing to file a declaratory judgment action, Valley Forge is estopped to raise policy defenses, if any, it may have to its obligations to defend and indemnify Whiting-Turner under the Valley Forge Policy, and Valley Forge must indemnify Whiting-Turner on a primary and non-contributory basis under the Valley Forge Policy for any settlement or judgment rendered against Whiting-Turner in the *Buccola* Lawsuit.

41.   An actual controversy exists between the parties and this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as it deems necessary under the facts and circumstances.

WHEREFORE, The Travelers Indemnity Company prays for entry of a judgment in its favor and against Valley Forge, and for the following relief:

(a)   Determine and adjudicate that Valley Forge has breached its duty to defend Whiting-Turner in connection with the *Buccola* Lawsuit;

(b)   Determine and adjudicate that Valley Forge is estopped from denying coverage to Whiting-Turner in connection with the *Buccola* Lawsuit;

(c)   Order that Valley Forge must defend Whiting-Turner on a primary and non-contributory basis under the Valley Forge Policy in connection with the *Buccola* Lawsuit;

(d)     Order that Valley Forge must indemnify Whiting-Turner, on a primary and non-contributory basis, for any settlement or judgment rendered against Whiting-Turner in the *Buccola* Lawsuit;

(e)     Order that Valley Forge must reimburse Travelers for all attorney's fees and costs paid by Travelers in connection with Whiting-Turner's defense of the *Buccola* Lawsuit; and

(f)     Grant such other relief as is deemed appropriate.

## COUNT III -- EQUITABLE SUBROGATION

42.    Travelers restates and incorporates the foregoing paragraphs 1 through 41 as though fully set forth and stated herein.

43.    The Other Insurance Condition in the Travelers Policy provides as follows:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\*     \*     \*

**4.     Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as described in Paragraphs a. and b. below:

As used anywhere in this Coverage Part, other insurance means insurance, or the funding of losses, that is provided by, through or on behalf of:

(i)     Another insurance company;….

\*     \*     \*

b.     Excess Insurance

(1)     This insurance is excess over:

\*     \*     \*

(b)     Any other insurance, whether primary, excess, contingent or on any other basis, that is available to [Whiting-Turner] when [Whiting-Turner] is an additional insured, or is any other insured that does

not qualify as a named insured, under such other insurance.

(2)     When this insurance is excess, we will have no duty under Coverages A or B to defend [Whiting-Turner] against any "suit" if any other insurer has a duty to defend [Whiting-Turner] against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to [Whiting-Turner's] rights against all those other insurers.

(3)     When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:

(a)     The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b)     The total of all deductible and self-insured amounts under all that other insurance….

44.    Valley Forge has a primary and non-contributory duty to Whiting-Turner to pay for the attorney's fees and costs incurred in Whiting-Turner's defense of the *Buccola* Lawsuit.

45.    Pursuant to the Other Insurance Condition in the Travelers Policy, the Travelers Policy is excess over the Valley Forge Policy.

46.    Pursuant to the Other Insurance Condition in the Valley Forge Policy, as amended by the Contractors' General Liability Extension Endorsement, the Travelers Policy is excess over the Valley Forge Policy.

47.    Travelers is secondarily liable to Whiting-Turner for Whiting-Turner's defense and attorney's fees and costs in the *Buccola* Lawsuit.

48.    Travelers has paid all of the reasonable attorney's fees and costs incurred in the defense of Whiting-Turner in connection with the *Buccola* Lawsuit.

49.     Travelers seeks to recover from Valley Forge all of the attorney's fees and costs that Travelers has paid in defending Whiting-Turner in the *Buccola* Lawsuit.

WHEREFORE, The Travelers Indemnity Company prays for entry of a judgment in its favor and against Valley Forge, and for the following relief:

(a)     Find that Valley Forge has the primary and non-contributory obligation to pay for Whiting-Turner's attorney's fees and costs incurred in connection with Whiting-Turner's defense of the *Buccola* Lawsuit;

(b)     Find that Travelers is secondarily liable to Whiting-Turner to pay for Whiting-Turner's attorney's fees and costs incurred in connection with Whiting-Turner's defense of the *Buccola* Lawsuit;

(c)     Order that Valley Forge must reimburse Travelers for all attorney's fees and costs that Travelers has paid in connection with Whiting-Turner's defense of the *Buccola* Lawsuit; and

(d)     Grant such other relief as is deemed appropriate.

## COUNT IV -- EQUITABLE CONTRIBUTION

## (IN THE ALTERNATIVE)

50.     Travelers restates and incorporates the foregoing paragraphs 1 through 49 as though fully set forth and stated herein.

51.     Valley Forge has a duty to Whiting-Turner under the Valley Forge Policy to pay for the attorney's fees and costs incurred in Whiting-Turner's defense of the *Buccola* Lawsuit.

52.     Travelers is also liable to Whiting-Turner under the Travelers Policy for Whiting-Turner's defense and attorney's fees and costs in the *Buccola* Lawsuit, making the Valley Forge Policy Co-Insurance with the Travelers Policy.

53.     Travelers has paid all of the reasonable attorney's fees and costs incurred in the defense of Whiting-Turner in connection with the *Buccola* Lawsuit.

54.     Travelers seeks to recover from Valley Forge its proportionate share of the attorney's fees and costs that Travelers has paid in defending Whiting-Turner in the *Buccola* Lawsuit.

WHEREFORE, The Travelers Indemnity Company prays in the alternative for entry of a judgment in its favor and against Valley Forge, and for the following relief:

(a)     Find that Valley Forge, like Travelers, has an obligation to pay for Whiting-Turner's attorney's fees and costs incurred in connection with Whiting-Turner's defense of the *Buccola* Lawsuit;

(b)     Find that the Valley Forge Policy is co-insurance with the Travelers Policy;

(c)     Order that Valley Forge must reimburse Travelers for its proportionate share of attorney's fees and costs that Travelers has paid in connection with Whiting-Turner's defense of the *Buccola* Lawsuit; and

(d)     Grant such other relief as is deemed appropriate.

Respectfully submitted,

CASSIDAY SCHADE LLP

/s/ John D. Hackett
One of the Attorneys for Plaintiffs,
THE TRAVELERS INDEMNITY COMPANY

John D. Hackett, ARDC #6196747
Robert G.S. Hartzer, ARDC #6332784
Cassiday Schade LLP
222 West Adams Street, Suite 2900
Chicago, IL  60606
(312) 641-3100
jhackett@cassiday.com

11154593

18